United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERNEST AND OKHOO HANES,

    Plaintiff,

v.

ARMED FORCES INS,

    Defendant.

                                        /

No. C 12-05410 SI

**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On September 13, 2013, the Court heard oral argument on plaintiff's motion for partial summary judgment and defendant's cross motion for summary judgment. Having carefully considered the arguments of counsel and the papers submitted, the Court DENIES plaintiff's motion for partial summary judgment (Docket No. 31), and DENIES defendant's motion for summary judgment (Docket No. 33).

**BACKGROUND**

The current case arose from a dispute dating back to the 1980s between plaintiffs, Okhoo and Ernest Hanes ("the Haneses") and their neighbors, the Bishops. In July 2001, the Haneses' neighbors, the Bishops, filed a Complaint for Preliminary and Permanent Injunction ("the first Bishop suit") in Alameda County Superior Court, alleging the Haneses' refusal to remove trees and overgrown vegetation obstructing the Bishops' view violated the view ordinance contained in Oakland Municipal

Code § 15.52.020, *et seq*. Statement of Undisputed Facts ("SUF") ¶ 5; Ex. 1 ¶ 22. In January 2002, the Haneses tendered to their insurer, Armed Forces Insurance ("AFI"), the defense of the first Bishop suit; AFI agreed to defend in the suit under a reservation of rights and hired attorney William Blakemore to represent the Haneses. *Id.* ¶¶ 7-9; Reservation of Rights, Ex. 2 p. 39. In July 2003, after a two day trial, the court found in favor of the Haneses, concluding the view corridor protection provision of the View Ordinance did not apply to these parties because they were not within the North Oakland Hills area. *Id.* ¶ 10; Hanes Decision 1, Ex. 3 ¶. 45-46.

After the conclusion of the first suit, the Bishops sought clarification from the City of Oakland regarding the parameters of the view ordinance. SUF ¶ 11. In July 2004, the City enacted Ordinance No. 12620, which clarified that the view ordinance applied throughout the City of Oakland. *Id.* Further, in 2006 the view ordinance was amended to include all trees, both trees allowed to grow as a result of natural regeneration and trees planted by the owner. *Id.*; Ordinance Amendment, Ex. 4 p 49; Ordinance No. 12752, Ex. 4 p 52.

In May 2007, counsel for the Bishops invited the Haneses to engage in alternative dispute resolution ("ADR"). SUF ¶ 12; Bonapart Letter Ex. 6 p. 87. The Haneses requested that AFI provide representation for them in the ADR proceedings, but AFI declined to provide an ADR defense. SUF ¶ 14; Ex. 6 p. 86; SUF ¶ 16. The Haneses retained Blakemore, the attorney who represented them in the first Bishop suit, to represent them in the ADR proceedings, which were ultimately unsuccessful. SUF ¶¶ 17-18.

On March 24, 2009, the Bishops again filed suit against the Haneses in Alameda Superior Court ("the second Bishop suit") seeking a declaration and injunction directing the Haneses to comply with Oakland Municipal Code Section 15.52.070 by removing their trees or maintaining them at a height that would not obstruct the Bishops' views. The Bishops alleged:

> 32. The existence of Defendants' trees obstructs and interferes with the free use and enjoyment of the Plaintiffs' property, and constitutes a nuisance, under Calif. Civil Code §§ 841.4 and 3479.

> 33. Unless Defendants are enjoined and required to maintain their trees on an ongoing basis, in compliance with Calif. Civil Code § 841.4, the Plaintiffs will continue to suffer irreparable injury in that the usefulness and economic value of their property is and will continue to be substantially diminished and the Plaintiffs will be deprived of the comfortable use and enjoyment of their property. . .

2

> 35. As a proximate result of Defendants' acts and omissions, as described above, Plaintiffs have suffered and continue to suffer damages, including but not limited to lost use and enjoyment of their property, discomfort, annoyance, and mental and emotional distress. Accordingly, Plaintiffs are entitled to recover compensatory damages in an amount to be proven at trial but not in excess of this Court's jurisdiction.
>
> 36. Defendants undertook the foregoing acts and omissions with a wilful and conscious disregard of the rights and safety of others, including the Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages . . .

Second Bishop Complaint, Ex. 9 ¶ 108-112.

On May 15, 2009, after the Haneses tendered defense of the second Bishop suit to AFI, AFI sent the Haneses a Reservation of Rights letter which stated that AFI "may have no duty to pay, indemnify, defend, or otherwise perform" under the Haneses' insurance policy. SUF ¶ 21; May 2009 Reservation of Rights Letter, Ex 11 p. 119. The letter cited to portions of the Haneses' policy, specifically the Personal Liability provision, including definitions of "occurrence" and "property damage," and the insured's duties after a loss. *Id.* ¶. 118-19. The Right of Reservation letter further informed the Haneses:

> Armed Forces Insurance will hire and retain an attorney to represent you and to protect your interests in this potential suit. However, you need to understand that this defense is being provided to you with a full and complete reservation of rights which Armed Forces Insurance may have under the Homeowner's Policy. This would include whether Armed Forces Insurance has a duty to defend you in this litigation, to settle this suit, or to pay any judgment that might be rendered against you in accordance with the terms of the policies . . . . We also wish to let you know that you certainly have the right to retain other counsel of your own choosing . . . . Armed Forces Insurance reserves all of its rights under the policy, including the right to deny coverage in its entirety.

*Id.*

As the second Bishop suit continued, AFI provided a defense to the Haneses, paying Blakemore's bills and costs. SUF ¶ 22. After the court denied the Haneses' motion for summary judgment, Blakemore sought, at AFI's direction, a settlement demand from the Bishops. *Id.* ¶¶ 27-29. Okhoo Hanes opposed the Bishops' settlement proposal. *Id.* ¶ 30. With AFI's approval, Blakemore filed a writ challenging the denial of the Haneses' motion for summary judgment; the Court of Appeal ultimately denied the writ. *Id.* ¶ 31.

The second Bishop suit was tried between December 2009 and January 2010, and in March 2010, a Statement of Decision in favor of the Bishops was issued by then-Superior Court Judge Jon Tigar. *Id.* ¶ 39, Ex. 17 ¶. 156-57. The decision ordered the Haneses to remove the trees at issue at their

3

own expense and to pay the Bishops' costs of suit including attorneys' fees, as provided by the view ordinance.[1] *Id.*

On April 7, 2010, AFI informed the Haneses, by letter, that AFI would not provide coverage for the award against them in the second Bishop suit:

> [T]here is no coverage provided for the award as set forth, including the award of attorneys' fees and costs. The Decision states you are in violation of the Oakland View Ordinance (Statute) and the violation was done intentionally which is willful misconduct. Intentional acts and violation of Statutes are barred from coverage pursuant to California Insurance Code section 533.

*Id.* ¶ 41, Ex. 19 p.162.

On April 21, 2010, counsel for AFI sent to Blakemore a letter stating "AFI will continue to provide a courtesy defense" for a motion for a new trial and motion to tax costs, but that upon the conclusion of those motions, and the entry of judgment by the trial court, "AFI will cease to provide a defense to Mr. and Mrs. Hanes." Ex. 19 p. 167. The letter further stated "AFI continues to reserve all its rights . . . including the right to seek reimbursement of fees and costs incurred." *Id.* The Haneses' motion for a new trial was denied and they appealed the judgment against them.[2] SUF ¶ 44. Stephanie Tatley, of AFI, noted in her electronic claim file notes on July 15, 2010: "Advised attny that appeal costs and time will not be paid for by AFI, it is the insureds responsibility." *Id.* ¶ 45. On October 27, 2011, the Court of Appeal affirmed the trial court's judgment in favor of the Bishops. *Id.* ¶¶ 45-46.

**PROCEDURAL HISTORY**

On October 19, 2012, the Haneses filed this lawsuit, based on diversity jurisdiction, which alleged that AFI breached its duty to indemnify and defend the Haneses; breached its duty of good faith and fair dealing; and violated the California Insurance Code. Docket No. 1. The Haneses sought a judgment against AFI awarding them the following amounts:

---

[1] Section 15.52.070 of the ordinance states: "Each party shall pay his or her own costs and attorneys except in the case where the dispute goes to trial or judicial arbitration. In the event that an action under this chapter is resolved after trial or judicial arbitration in municipal or Superior Court, the prevailing party shall be entitled to reasonable attorney's fees and costs of suit."

[2] The Bishops did not appeal the part of the judgment denying them damages for emotional distress.

4

1. Additional expenses incurred prior to the suit:
    Mediation: $3,173
    Lost earnings: $250
    Attorney fees: $7,596.23
        **Total: $11,019.77**

2. Additional expenses the Haneses incurred during the suit:
    Meeting with counsel and depositions: $3,236.23
    Expenses to attend trial: $5,745.41
    Lost earnings: $2,750.00
        **Total: $11,731.64**
    And interest on these sums

3. Final judgment (after appeal) in the second Bishop suit (amount the Haneses paid to the Bishops for the Bishops' attorneys' fees and costs):
        **Total: $295,957.87**

4. Attorneys' fees and costs post-trial and to prosecute the appeal:
    Post trial: $9,000
    Appeal: $57,699.56
        **Total: $68,699.56**

AFI answered by asserting nine affirmative defenses as well as counterclaims for breach of contract, for unjust enrichment, and for a declaratory judgment that it owed no duty to defend or to indemnify the Haneses. In addition, AFI sought a judgment against the Haneses for attorneys' fees and costs in the present action; a declaration the insurance policy did not cover the monetary amounts sought by the Haneses in this action; reimbursement for the defense fees and costs for defending the claims not covered by the policy; and further relief as deemed just and proper. Docket No. 9.

On July 26, 2013, the Haneses filed a motion for partial summary judgment and AFI filed a motion for summary judgment. Docket Nos. 31, 33. Both parties submitted responses and replies to the respective summary judgment motions. Docket Nos. 35-38. In a joint stipulation granted July 31, 2013, the parties agreed their cross-motions for summary judgment are limited to the issues of whether AFI is liable to the Haneses for the costs and attorneys' fees the Haneses incurred in connection with the Bishops' claims leading up to and during the second Bishop suit, and whether the Haneses are liable to AFI for the attorneys' fees and costs AFI incurred defending the Haneses in the second Bishop suit. Docket No. 34. Accordingly, this order considers only the claims included in the parties' stipulation.[3]

---

[3] Any other issues in the case will be resolved at a later time. *Cf. Jarndyce v. Jarndyce*, Dickens, *Bleak House*.

5

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

## DISCUSSION

It is well-established under California law that "an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may

6

owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) (citation omitted). "The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003). "An insurer may seek[] summary judgment on the ground the claim is excluded, in which case it has the burden . . . to prove that the claim falls within an exclusion." *Roberts v. Assurance Co. of America*, 163 Cal. App. 4th 1398, 1406 (2008) (internal quotation marks and citations omitted) (alterations in original). "To satisfy its burden, an insurer need not disprove every possible cause of the loss and once the insurer establishes the claim is excluded, the burden shifts to the insured to show a triable issue of material fact exists." *Id.* Insurance policy coverage may be limited by exclusionary clauses only to the extent that those clauses are "conspicuous, plain and clear." *Haynes v. Farmers Ins. Exch.*, 32 Cal.4th 1198, 1204 (2004). "[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured," while "exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon*, 31 Cal. 4th at 648 (internal quotation marks omitted) (alterations in original).

**1.      Expenses incurred prior to the second Bishop suit**

The Haneses contend that AFI is liable for the attorney fees, expenses and lost earnings they incurred in connection with the mediation leading up to the second Bishop suit. Haneses' Motion, p. 22. They argue that the letter from the Bishop's counsel seeking ADR ("the Bonapart letter") was a "claim" covered by their policy, and so AFI is liable to reimburse the expenses the Haneses incurred in participating in the ADR process prior to the filing of the second Bishop suit. *Id.*; Haneses' Reply, p. 11. AFI maintains it had no duty to defend the Haneses prior to the filing of the second Bishop suit because the policy provided no coverage for a violation of the Oakland view ordinance. AFI Motion, p. 11.

Under California law, an "insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed." *Buss v. Superior Court*, 16 Cal. 4th 35, 46 (1997) (citing *Montrose*, 6 Cal. 4th at 295; *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276-77 (1966)) *Gray*, 65 Cal. 2d at 276-77). Accordingly, AFI had a duty to defend the Haneses in any potentially

7

1 covered claim against them. The Haneses carry the burden of establishing that the claim "is within the
2 basic scope of coverage." *MacKinnon*, 31 Cal. 4th at 648.

3 The Bonapart letter was titled, "Re: *Bishop v. Hanes*: Current Status of Oakland View
4 Ordinance," and although it did not allege any specific causes of action or damages claims, the letter
5 did refer to "the Bishops' view claim" (although expressly declining "to outline the factual history and
6 bases" of the claim). Bonapart Letter, Ex. 6, p. 87. The letter reviewed the two amendments that were
7 made to the view ordinance after the conclusion of the first Bishop suit. It emphasized that the
8 amended ordinance applies throughout the city of Oakland and to all trees on an owner's property,
9 whether planted or the result of natural regeneration, and specifically stated "these two defenses, which
10 I understand were key to your case, are no longer applicable." *Id*. The letter continued: "Regardless
11 of whether it is a requirement, the Bishops are inviting you to participate in some form of alternative
12 dispute resolution prior to (and hopefully in lieu of) litigation . . . Please keep in mind that a basis for
13 an award of attorneys fees is if a 'tree owner has refused to participate in good faith in the initial
14 reconciliation or voluntary arbitration processes.'" *Id*. ¶. 87-88.

15 AFI knew of the Bishops' prior claim that the Haneses violated the view ordinance and AFI
16 should have been aware that the Bonapart letter was a precursor to the filing of a second suit against the
17 Haneses. However, the duty to defend is not triggered by *any* claim against an insured; rather, an
18 insurer has a duty to defend "potentially covered" claims against an insured. *Buss*, 16 Cal. 4th at 46.
19 Thus, AFI had a duty to defend the Haneses against claims "potentially covered" by their insurance
20 policy. Contrary to the Haneses' position, the Bonapart letter did not trigger AFI's duty to defend
21 because it was not an assertion of a potentially covered claim. The Personal Liability provision of the
22 Haneses' policy states:

23 > If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
24 > 1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and
25 > 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

28 Insurance Policy, Ex. 24, p. 309.

8

The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period in: a. 'Bodily injury'; or b. 'Property damage'." *Id.*, p. 308. "'Bodily injury' means bodily harm, sickness or disease, including required care, loss of services and death that results," and "property damage" is defined as "physical injury to, destruction of, or loss of use of tangible property." *Id.*, p. 307-08.

The Bonapart letter did not include any claims of bodily injury or property damage. It made no allegations of bodily harm, sickness, or disease, nor were there any claims of physical injury, destruction or loss of use of any property. The letter referred only to the Bishops' "view claim," which could not have constituted a covered claim under the policy. To constitute a potentially covered claim under the policy, the Bishops' view claim must have been a claim "for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence'" as defined by the policy. Insurance Policy, Ex. 24, p. 309. A "private view claim" under the ordinance requires the claimant show: 1) the precise nature and extent of the alleged view obstruction; 2) the exact location of all trees alleged to cause a view obstruction; 3) any mitigating actions proposed by parties to resolve the alleged view claim; and 4) a failure of personal communications between the parties to resolve the alleged view obstruction. View Ordinance, Ex. A, p. 5. The view ordinance does not provide for damages and is not a claim of property damage or bodily injury, the only claims to which the personal liability policy coverage applies. Thus, the Bishops' view claim could not have constituted a potentially covered claim under the Haneses' personal liability policy, and so it could not have triggered AFI's duty to defend. Summary judgment cannot be awarded to the Haneses on this issue.

**2.     Additional expenses the Haneses incurred during litigation**

The Haneses argue AFI is liable for the additional expenses the Haneses incurred during the litigation of the second Bishop suit, specifically for meeting with counsel and depositions, expenses to attend trial, and lost earnings. Haneses' Motion, ¶. 1, 24. AFI contends it is not liable for these additional expenses. AFI's Opposition, p. 22.

"The burden is on the insured to establish that the claim is within the basic scope of coverage," and here the Haneses must carry this burden to be granted summary judgment on this issue. *See*

9

1 *MacKinnon*, 31 Cal. 4th at 648. The Haneses cite to the "Additional Coverages" provision, which states: "We pay. . . Reasonable expenses incurred by an 'insured' at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit. . ." Ex. 24. The Haneses present only a cursory argument on this issue, and provide no facts to support their position. AFI, however, points to several facts that call into question the Haneses' position. AFI contends the Haneses never submitted claims for these expenses. AFI's Opposition, p. 22. Additionally, AFI argues the Haneses have provided no evidence AFI requested they incur these costs, as required by the terms of the "Additional Coverages" provision. *Id.* The Court finds the Haneses have failed to establish that these additional expenses are covered by the insurance policy and summary judgment on this issue cannot be granted in their favor.

### 3. Final judgment in the second Bishop suit

The Haneses argue that AFI is liable for the judgment awarded to the Bishops because it is a damages claim covered by the policy, or in the alternative, because the award is covered under the policy's additional coverages clause. Haneses' Motion, p. 19. AFI asserts it had no duty to indemnify the Haneses for the amount paid to the Bishops because the insurance policy does not provide coverage for the judgment. AFI's Motion, p. 10. Again, the Haneses carry the burden of establishing the judgment awarded to the Bishops is "within the basic scope of coverage." *See MacKinnon*, 31 Cal. 4th at 648.

The Haneses' argument that their policy covers the judgment amount fails as a matter of law. Haneses' Motion, p. 19. In support of their position, the Haneses cite to their personal liability policy to argue there was an "occurrence" that resulted in "property damage" and "loss of use" of "tangible property." But, as discussed above, the view ordinance does not provide for damages. The ordinance does include a civil penalty provision, but that provision was not enforced against the Haneses, nor does it constitute a damages claim. Under the view ordinance, attorney fees and costs may be apportioned between the parties and the prevailing party may be entitled to these fees and costs. But the award of attorney fees and costs to the prevailing party is not a damages award. No damages awards were granted to the Bishops; their emotional distress claims, the only claims for which there was even

1 potential coverage, were rejected by the trial court and their damages request was denied as was their 2 request for an imposition of a civil penalty. Judgment, Ex. 17, p. 157. The award of attorney fees to 3 the Bishops was not a damages award for which the Haneses were liable and could therefore not be 4 "damages" covered under the policy. Second, a view claim under the ordinance is not a claim for 5 property damage or loss of use of property, and thus cannot be a covered claim under the personal 6 liability policy. Here, the attorney fees and costs awarded to the Bishops arose from the trial court's 7 finding the Haneses violated the view ordinance. As already explained, a view claim is not a claim 8 arising from property damage or bodily injury. Accordingly, the Bishops' view claim could not have 9 constituted a potentially covered claim under the Haneses' personal liability policy.

10 The Haneses next point to the Additional Coverages provision of the policy to support their 11 argument that the judgment against them is covered under the policy as a "cost" taxed against them in 12 a suit AFI defended. Haneses' Motion, p. 19. The Additional Coverages provision states:

13 We cover the following in addition to the limits of liability:
A. Claim Expenses
14 We pay:
1. Expenses we incur and costs taxed against an "insured" in any suit we defend. . .
15 4. Interest on the entire judgment which accrues after entry of the judgment and before we pay
or tender, or deposit in court that part of the judgment which does not exceed the limit of
16 liability that applies.

17 Insurance Policy, Ex. 24, *Id.* ¶. 307-312.

18 California courts have interpreted the word "costs" as used in the Haneses' policy consistent with 19 its use in California Code of Civil Procedure section 1033.5(a)(10), which specifies attorney's fees, 20 when authorized by contract, statute, or law, are allowable as costs recoverable by a prevailing party. 21 *Prichard v. Liberty Mutual Ins. Co.*, 84 Cal. App. 4th 890, 912 (2000); *Insurance Co. of North America* 22 *v. National American Ins. Co.*, 37 Cal. App. 4th 195, 206-07 (1995)). Under the Oakland view 23 ordinance, where "an action under this chapter is resolved after trial or judicial arbitration in Municipal 24 or Superior Court, the prevailing party shall be entitled to reasonable attorney's fees and costs of suit." 25 Oakland Municipal Code § 15.52.070. Accordingly, the term "costs" in the Haneses' Additional 26 Coverages provision includes the reasonable attorney's fees and costs of suit authorized in the view 27 ordinance.

28

11

1     The Haneses rest upon the provision stating AFI will pay for "costs taxed against an 'insured' 2 in any suit we defend," and cite to *Prichard v. Liberty Mutual Ins. Co.*, 84 Cal. App. 4th 890 (2000), 3 for the proposition that AFI is obliged to pay expenses and costs in *any* suit it defends, whether or not 4 the claims giving rise to those costs were covered, or potentially covered, by the policy. However, a 5 more recent California Court of Appeal case, *State Farm General Ins. Co. v. Mintarsih*, 175 Cal. App. 6 4th 274, 286 (2009), explains that an insurer's duty to defend "does not give rise to an obligation under 7 a supplemental payments provision to pay costs awarded against the insured that can be attributed solely 8 to claims that were not potentially covered" because "the reference in the supplemental payments 9 provision to 'suits we defend' encompasses only those claims that the insurer agreed to defend under 10 the terms of the policy." In *Mintarsih*, the court examined insurance policy language nearly identical 11 to that in the Haneses' additional coverages provision. The court reasoned the term in which the insurer 12 agreed to pay "expenses we incur and costs taxed against an Insured in suits we defend" made "the 13 insurer's obligation to pay an award of costs against the insured dependent on the defense duty." 14 *Mintarsih*, 175 Cal. App. 4th at 284. Reasoning that "requiring an insurer to pay costs awarded against 15 an insured only if the insurer defended the action would discourage insurers from providing a defense 16 in cases where coverage was in doubt," the court held an insurer's "implied-in-law duty to defend an 17 entire 'mixed' action, including claims that are not even potentially covered, does not give rise to an 18 obligation under a supplemental payments provision to pay costs awarded against the insured that can 19 be attributed solely to claims that were not potentially covered." *Id.* at 286.

20     The rationale of the California Court of Appeal in *Mintarsih* is sound. In this case, where the 21 award of attorney fees and costs against the Haneses can be allocated solely to the view ordinance claim, 22 which was not even potentially covered under the policy, AFI had no duty to pay the judgment awarded 23 to the Bishops. The Haneses cannot be awarded summary judgment on this issue.

25  **4.    Post-trial attorney fees and costs to prosecute the appeal**

26     The Haneses assert AFI is liable for the attorneys' fees and expenses they incurred in prosecuting 27 their appeal of the second Bishop suit. Haneses' Motion, p. 22. AFI acknowledges that the duty to

12

1 defend generally includes a duty to pursue an appeal, but argues the trial court's judgment in the second
2 Bishop suit eliminated their duty to defend on appeal. AFI Opposition, p. 21.[4]

"The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded or until it has been shown that there is *no* potential for coverage." *Montrose*, 6 Cal. 4th at 295. "[T]here is a general consensus that an insurer is obliged to pursue an appeal on behalf of its insured where there are reasonable grounds for appeal." *Jenkins v. Ins. Co. of North America*, 220 Cal. App. 3d 1481, 1489 (1990) (quoting *Cathay Mortuary Inc., v. United Pacific Ins. Co.*, 582 F.Supp. 650, 657 (N.D.C.A. 1984).

As discussed above, the Bishops' allegations of mental and emotional distress had at least the potential to be covered by the insurance policy and so AFI had a duty to defend the Haneses at the initiation of the second Bishop suit. However, it is undisputed that the Bishops, in their sworn answers to interrogatories prior to trial, stated their "action is for declaratory and injunctive relief and does not contain a claim for personal injury." SUF ¶ 25. To the question, "Do you attribute any physical, mental, or emotional injuries to the incident?" the Bishops responded, "Plaintiffs' action is for declaratory and injunctive relief and does not contain a claim for personal injury." *Id*. It is also undisputed that Blakemore sent to AFI and the Haneses an e-mail which stated, "I think pltfs discovery responses make clear that they are seeking injunctive relief/removal of the trees more than money damages . . ." *Id*.; Ex. 14, p. 134.[5] The Bishops' interrogatory responses, made under oath, clearly stated they were not pursuing a personal injury claim and Blakemore's email to both AFI and the Haneses explained that the Bishops' discovery responses clarified they sought injunctive relief and removal of the Haneses' trees. The Bishops' claims of emotional distress were the only claims that were even potentially covered by the Haneses' insurance policy, and so once those claims were extinguished, AFI's duty to defend the Haneses ended. Accordingly, there were no potentially covered claims and AFI did not have a duty to defend the Haneses on appeal. The Haneses cannot be awarded summary judgment as to this issue.

---

[4] The Haneses also argue that AFI is liable for the judgment against them in the Second Bishop suit because they failed to defend the Haneses in their appeal of the judgment. Haneses' Motion, p. 21.

[5] Further, Judge Tigar's statement of decision in the second Bishop suit stated, "[a]lthough the Bishops testified at trial that they had suffered emotional distress from the view obstructions in this case, that testimony contradicted their earlier sworn interrogatory answers in which they claimed not to have suffered such damages." Ex. 17, p. 156.

13

### 5. Reimbursement to AFI for expenses paid in defending the Haneses

AFI contends it is entitled to reimbursement for the expenses paid to defend the second Bishop suit because the defense they provided was for non-covered claims. AFI's Motion, p. 22. The Haneses argue AFI's counterclaim is meritless because an insurer may not seek reimbursement of defense costs for claims that are at least potentially covered. Haneses' Motion, p. 24.

Under California law, an insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993) (quoting *Gray*, 65 Cal. 2d at 275) (emphasis in original). "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Id.* "Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." *Id.* (citations omitted). The California Supreme Court in *Buss* stated, "[a]s to claims that are at least potentially covered, the insurer may not seek reimbursement for defense costs." 16 Cal. 4th at 49. In contrast, "[a]s to the claims that are not even potentially covered, however, the insurer may indeed seek reimbursement for defense costs." *Id.* at 50. In a mixed action, meaning one in which some of the claims are at least potentially covered and others are not, an insurer may obtain reimbursement for "[d]efense costs that can be allocated solely to the claims that are not even potentially covered." An insurer must carry the burden for reimbursement by a preponderance of the evidence that the defense expenses are solely allocable to claims not potentially covered. *Id.* at 53.

The initial complaint in the second Bishop suit alleged the Haneses violated the view ordinance and created a nuisance under California Civil Code sections 841.4 and 3479. The Bishops claimed that as a proximate result of the Haneses' actions, they suffered discomfort, annoyance, and mental and emotional distress, for which they sought compensatory damages. Bishop Complaint, Ex. 9 ¶. 108-112. The Bishops further alleged the Haneses acted with a willful and conscious disregard of the rights and safety of others, for which they sought punitive damages. *Id*. The Bishops later amended this complaint, and removed the allegation of willful and conscious disregard as well as the request for

punitive damages. Amended Complaint, Ex. 12, p. 128. But the claims of lost use and enjoyment of their property, discomfort, annoyance, and mental and emotional distress remained. *Id.*

As previously stated, the terms of the Personal Liability policy provided coverage for claims or suits "brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies . . . ." Insurance Policy, Ex. 24, p. 309. Comparing the allegations of the Bishops' amended complaint with the terms of the policy, the claims for "lost use and enjoyment of their property" and "mental and emotional distress" had at least the potential to be covered by the insurance policy. And so as a matter of law, AFI cannot receive reimbursement for *all* of the defense expenses. However, AFI is entitled to reimbursement for defense expenses that it can demonstrate, by a preponderance of the evidence, are allocable solely to claims not potentially covered by the policy.

While the potential exists for AFI to successfully show that it is entitled to defense expenses for claims that were not even potentially covered by the policy, AFI has not yet met this burden. AFI cites to the declaration of Paula Tripp Victor in support of its motion for summary judgment, which it claims sets forth the costs that can be allocated solely to the potentially covered claims. The declaration does include estimates of the amount of time spent by Blakemore defending the claims of "discomfort, annoyance, mental and emotional distress." Docket No. 33. But, Victor's declaration concedes she has not yet deposed Blakemore regarding the time he spent defending the discomfort, mental and emotional stress claims. *Id*. As the Haneses accurately contend, the declaration of Victor, based on her own estimations but not on any personal knowledge of the time spent and expenses incurred defending the potentially covered claims, is not admissible evidence to support their claim. *See* Fed.R.Evid. 602; *see also Norita v. Northern Mariana Islands*, 331 F.3d 690, 697- 698 (9th Cir. 2003). AFI has not met its burden to show, by a preponderance of the evidence, that it is entitled to reimbursement for claims that were not potentially covered. Accordingly, AFI cannot be awarded summary judgment on this issue.

///

15

**CONCLUSION**

The Haneses' requests for summary judgment as to AFI's liability for expenses incurred prior to the second Bishop suit; additional expenses incurred during the litigation; final judgment in the second Bishop suit; and the post-trial attorney fees and costs to prosecute appeal are DENIED.  AFI's motion for summary judgment as to reimbursement from the Haneses for the expenses AFI paid in defending the second Bishop suit is also DENIED.

**IT IS SO ORDERED.**

Dated:  November 21, 2013

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE